Steven V. Richert, ISB #2432
**FEDERAL DEFENDERS OF IDAHO**
757 North 7th Ave.
Pocatello, ID   83201
Telephone:   (208) 478-2046
FAX: (208) 478-6698

Attorneys for Defendant

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| **UNITED STATES OF AMERICA**, ) | |
| ) | |
| Plaintiff, ) | Case No. CR-17-328-BLW |
| ) | |
| vs. ) | **SENTENCING MEMORANDUM BY** |
| ) | **DEFENDANT NEWBOLD** |
| **TRAVIS NEWBOLD**, ) | |
| ) | |
| Defendant. ) | |
| ) | |

   **COMES NOW,** Travis Newbold, by and through counsel, and respectfully submits the following Memorandum for consideration by the Court at sentencing.

   As an objection to the Presentence Report, the government asserted that the provisions of guideline §2D1.1(b)(7) should increase Mr. Newbold's offense level by two levels for participation in the "mass-marketing" of the anabolic steroids involved in this prosecution. The Presentence writer agreed to the additional offense levels, which increases Mr. Newbold's suggested guideline range by ten (10) months at the low end of the sentencing range.  Mr. Newbold avers that the facts do not support the offense level enhancement.

1

Guideline §2D1.1(b)(7) provides a two offense level enhancement if the facts support the conclusion that the defendant, or someone whose conduct can be attributable to the defendant under relevant conduct, distributes "a controlled substance through mass-marketing by means of an interactive computer service…"  Here the government argued and the Presentence writer acquiesced, that Mr. Newbold should be held responsible for the use of "mass-marketing" through a website associated with "Amy," a person who sent to Mr. Newbold anabolic steroids for redelivery to someone else.  Although the jury convicted Mr. Newbold of conspiring to import/distribute anabolic steroids into the United States, the facts do not support the application of the mass-marketing enhancement.

First, it should be noted that Mr. Newbold and "Amy" did not communicate via the website associated with "Amy," "www.allianceraws.com."  As the government advised, the communication between "Amy" and Mr. Newbold primarily occurred on an internet application known as "WhatsApp."  Although the government at trial and now seeks to prove collaboration between "Amy" and Mr. Newbold based upon "Amy" asking what would be a good name for her website, no evidence suggests that Mr. Newbold had any development or operational link to the website.  Most of the suspect communications between the two dealt with "Amy" asking Mr. Newbold if he was ready to make an order, presumably, anabolic steroids. Otherwise, the two exchanged "small-talk." No evidence suggests that Mr. Newbold participated or profited from the existence of the website.  In fact little evidence suggested that Mr. Newbold ever went to, or ordered, anything from the website, let alone had any profit or proprietary interest in the site.  Mr. Newbold's communications with "Amy" were via an email service, for the most part initiated by "Amy" asking for Mr. Newbold to buy product. At some point, however, "Amy" apparently asked

2

Mr. Newbold to transship packages from "Amy" in China to others in the United States.

Mr. Newbold should be held accountable for the "jointly undertaken criminal activity" of another pursuant to guideline §1B1.3, if his conduct, or the conduct of another, was actually jointly undertaken. At application note 13 to 2D1.1(b)(7), the guidelines define "mass-marketing by means of an interactive computer service to mean "the solicitation, by means of an interactive computer service, of a large number of persons to induce those persons to purchase a controlled substance." Here, Mr. Newbold did not create, participate in the creation, operate, fund or share in the operation of the web site associated with "Amy."  The evidence showed that Mr. Newbold agreed on at least three occasions to receive a package from "Amy" and reship the package to another.  It appears that in exchange for this work, "Amy" compensated Mr. Newbold with a small amount of money ($50.00) or a small amount of anabolic steroids.  Indeed, Mr. Newbold's conduct assisted in the importation of controlled substances, but his conduct did not assist in the solicitation of others to induce the purchase of a controlled substance.  Mr. Newbold did not agree, nor does he conduct support that he agreed, to the solicitation to induce many others to purchase controlled substances.

Mr. Newbold did not join "Amy's" mass-marketing scheme to distribute controlled substances, but rather, when asked, assisted in transshipping a small number of packages.  Mr. Newbold's agreement to participate in the distribution of anabolic steroids was limited.  The concept of relevant conduct as outlined at guideline §1B1.3 would hold Mr. Newbold responsible for the scope of his agreement to join in criminal activity.  Mr. Newbold's "jointly undertaken criminal activity" does not extend to the marketing activity of "Amy."  The two offense level enhancement at 2D1.1(b)(7) is not applicable because Mr. Newbold's "jointly undertaken criminal

activity" did not extend to the mass-marketing of "Amy."

As the Presentence Report indicates, Mr. Newbold has had numerous encounters with law enforcement, primarily for disturbing the peace, domestic violence and alleged batteries. All but one of his offenses are misdemeanors.  Notably, Mr. Newbold's lone felony conviction arose when he delivered anabolic steroids in 2013. Mr. Newbold apparently made the comment to the presentence writer at the time of that state offense that once a person is in the "system" law enforcement continues to pursue him.  Mr. Newbold may have some support for his feelings. The Presentence Report here reflects eighteen charged but dismissed misdemeanors similar to those for which he has convictions.

Mr. Newbold has been confined to a county jail since October 25, 2017. For most of that time no programming, classes, activities or even work has been available to him, which makes sitting in a county jail rather difficult.  Mr. Newbold made two unsuccessful efforts to be released pending trial of this proceeding.  As he mentioned to the magistrate, and reflected in the Presentence Report, wants to work in the construction field and return to financial stability.  Mr. Newbold has never abused alcohol nor used any controlled substance unrelated to body building. He has a daughter he hopes to reunite with.  Although illegal, Mr. Newbold's conduct and crimes do not reflect a high risk of future danger to the community.

Mr. Newbold understands the significant potential guideline penalty he is facing. He suggests, however, that a variance to no more than fifteen additional months is sufficient, but not greater than necessary, to address punishment for his crimes.  Coupled with the fourteen months he has already been incarcerated, the additional fifteen months would work a total penalty of twenty nine months.  The suggested penalty would be greater than the twenty four month

(suspended) sentence he received on state steroid conviction. This crime resulted in the filing of a probation violation on the state offense, which as of this date, has not been resolved. Mr. Newbold could very well face an additional custodial term after discharging any federal sentence. The probation violation, if not resolved, will prevent Mr. Newbold from transitioning to a community reentry center. Mr. Newbold's body building avocation certainly has resulted in serious consequences.

**DATED** this 27th day of December, 2018.

By: /s/
Steven V. Richert

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that the foregoing document was electronically filed with the Clerk of the Court using the CM/ECF system and a copy sent via email to the following person(s):

Bryan.Wheat@usdoj.gov

Tonya_Mcdonald@idp.uscourts.gov

/s/
Steven V. Richert