1            IN THE UNITED STATES DISTRICT COURT

2              FOR THE DISTRICT OF IDAHO

3    UNITED STATES OF AMERICA,    )
                                  )    Case No. 4:17-cr-328-BLW
4             Plaintiff,          )
                                  )    Pocatello, Idaho
5         vs.                     )    October 19, 2018
                                  )    8:51 a.m.
6    TRAVIS M. NEWBOLD,           )
                                  )    Jury Trial, Volume 3
7             Defendant.          )
     _____ )

8                    TRANSCRIPT OF PROCEEDINGS
9           BEFORE THE HONORABLE B. LYNN WINMILL
        UNITED STATES DISTRICT COURT CHIEF JUDGE, AND A JURY

10

11   APPEARANCES:

12   For the Government:

13            BRYAN J. WHEAT
              Special Assistant U.S. Attorney
14            United States Attorney's Office
              District of Idaho
15            801 E. Sherman #192
              Pocatello, ID 83201
16            208-478-4166

17   For the Defendant:

18            STEVEN V. RICHERT
              Federal Defender Services of Idaho, Inc.
19            757 North 7th Avenue
              Pocatello, ID 83201
20            208-478-2046

21   Also present:  Special Agent Andy Robertson

22

23   Court Reporter:  Katherine Eismann, CRR, RDR
                       katherine_eismann@id.uscourts.gov
24
     Proceedings reported by machine shorthand, transcript produced
25   by computer-aided transcription.

1          (Friday, October 19, 2018, 8:51 a.m.)

2                          --oOo--

3                  P R O C E E D I N G S

4        (Jury out.)

5              THE COURT:  All right.  Good morning.

6              MR. WHEAT:  Good morning.

7              THE COURT:  We will go on the record for our formal

8    jury instruction conference.  We met yesterday and went through

9    the proposed instructions to the Court plus a verdict form,

10   made a few changes, and then Mr. Metcalf sent out a final

11   version with those changes last night.

12             I instructed counsel if you had any concerns, you'd

13   let me -- let us know before this morning so we could address

14   those.  And I'm assuming, since we didn't hear from anyone,

15   that everyone's in agreement that the instructions are

16   satisfactory.

17             So, starting with -- if not, this is your last

18   opportunity to make your record as to any objections you have

19   to the Court's proposed instructions to the jury.  And I would

20   remind you that we were not on the record yesterday.  That was

21   an informal working session.  So, if there were any objections

22   you stated then, you need to restate them now so that they are

23   part of the appellate record.

24             Mr. Wheat from the government.

25             MR. WHEAT:  No objection, Your Honor.  Thank you.

1              THE COURT:  Mr. Richert.

2              MR. RICHERT:  We have no objections.

3              THE COURT:  All right.  Then we will instruct the

4     jury as indicated.

5              As soon as they are here, perhaps in 10 minutes or

6     so, we will try to start promptly.  We will go until -- well,

7     until I am done instructing the jury, take a recess, and then

8     reconvene at 11:00 and then go directly into arguments.

9              But counsel, I might ask, if you want to stand at the

10    lectern and then face the jury, we might want to get that

11    microphone set up so that you're talking at the microphone so

12    we can hear you.  I know Mr. Richert will just wander around,

13    so it doesn't do any good to try to lasso him in, but at least

14    see if we can't do something to help counsel -- help the court

15    reporter out.  So, all right?

16             All right.  We'll see you in about 10 minutes.

17          (Recess 8:53 a.m.  Resumed 9:05 a.m.  Jury in.)

18             THE COURT:  Thank you everybody.  Please be seated.

19             COURTROOM DEPUTY:  The Court will now hear Criminal

20    Case 17-328, United States of America versus Travis M. Newbold,

21    for day three of jury trial.

22             THE COURT:  Good morning, ladies and gentlemen.  I

23    hope you had a relaxing evening.

24             The Court has met with counsel, and we have gone over

25    and I have determined how you should be instructed in this

1    case.  You have or are being handed to you now a copy of my

2    final instructions.  I believe the preliminary instructions

3    have been gathered up.

4              THE CLERK:  I didn't do that, Judge.

5              THE COURT:  Do any of have you those with you?  Could

6    you just hand those to Mr. Metcalf?  They are in -- all right.

7    If you -- we just need to make absolutely sure those are all

8    gathered up as soon as we are done here today.  We don't want

9    any confusion, and the preliminary instructions were only

10   preliminary.  These are the final instructions that will

11   control your deliberations.  All right?

12             In fact, I think that's the first thing we will say

13   here as we begin reading the instructions.

14                        JURY INSTRUCTIONS

15             Members of the jury, now that you have heard all the

16   evidence, it is my duty to instruct you on the law that applies

17   to this case.  Each of you have been provided with a copy of

18   these instructions which you will refer to in the jury room

19   during deliberations.

20             It is your duty to weigh and to evaluate all the

21   evidence received in the case and, in that process, to decide

22   the facts.  It is also your duty to apply the law as I give it

23   to you to the facts as you find them whether you agree with the

24   law or not.  You must decide the case solely on the evidence

25   and the law and must not be influenced by any personal likes or

1   dislikes, opinions, prejudices or sympathy.  You will recall

2   that you took an oath promising to do so at the beginning of

3   the case.

4          You must follow all these instructions and not single

5   out some and ignore others.  They are all important.  Please do

6   not read into these instructions or into anything I may have

7   said or done any suggestion as to what verdict you should

8   return.  That is a matter entirely up to you.

9          The indictment is not evidence.  The defendant has

10  pleaded not guilty to the charges.  The defendant is presumed

11  to be innocent unless and until the government proves the

12  defendant guilty beyond a reasonable doubt.  In addition, the

13  defendant does not have to testify or present any evidence to

14  prove innocence.  The government has the burden of proving

15  every element of the charges beyond a reasonable doubt.

16         The defendant has not testified.  A defendant in a

17  criminal case has a constitutional right not to testify.  In

18  arriving at your verdict, the law prohibits you from

19  considering in any manner that the defendant did not testify.

20         Proof beyond a reasonable doubt is proof that leaves

21  you firmly convinced the defendant is guilty.  It is not

22  required that the government prove guilt beyond all possible

23  doubt.

24         A reasonable doubt is a doubt based upon reason and

25  common sense and is not based purely on speculation.  It may

1  arise from a careful and impartial consideration of all the

2  evidence or from lack of evidence.

3  If after a careful and impartial consideration of all

4  the evidence, you are not convinced beyond a reasonable doubt

5  that the defendant is guilty, it is your duty to find the

6  defendant not guilty.  On the other hand, if after a careful

7  and impartial consideration of all the evidence, you are

8  convinced beyond a reasonable doubt that the defendant is

9  guilty, it is your duty to find the defendant guilty.

10  The evidence you are to consider in deciding what the

11  facts are consists of:

12  First, the sworn testimony of any witness;

13  Second, the exhibits received in evidence, and

14  Third, any facts to which the parties have agreed.

15  In reaching your verdict, you may consider only the

16  testimony and exhibits received in evidence.

17  The following things are not evidence and you may not

18  consider them in deciding what the facts are:

19  First, questions, statements, objections and

20  arguments by the lawyers are not evidence.  The lawyers are not

21  witnesses.  Although you must consider a lawyer's question to

22  understand the answers of a witness, the lawyer's questions are

23  not evidence.  Similarly, what the lawyers have said in their

24  opening statements, will say in their closing arguments, and

25  have said at other times was intended to help you interpret the

1  evidence but it is not evidence.  If the facts as you remember
2  them differ from the way the lawyers state them, your memory of
3  them controls.

4       Second, any testimony that I have excluded, stricken,
5  or instructed you to disregard is not evidence.  In addition,
6  some evidence was received only for a limited purpose.  When I
7  have instructed you to consider certain evidence in a limited
8  way, you must do so.

9       Third, anything you may have seen or heard when the
10 Court was not in session is not evidence.  You are to decide
11 the case solely on the evidence received at the trial.

12      Evidence may be direct or circumstantial.  Direct
13 evidence is direct proof of a fact, such as testimony by a
14 witness about what that witness personally saw, or heard, or
15 did.  Circumstantial evidence is indirect evidence.  That is,
16 it is proof of one or more facts from which you can find
17 another fact.  You are to consider both direct and
18 circumstantial evidence.  Either can be used to prove any fact.
19 The law makes no distinction between the weight to be given to
20 either direct or circumstantial evidence.  It is for you to
21 decide how much weight to give to any evidence.

22      In deciding the facts in this case, you may have to
23 decide which testimony to believe and which testimony not to
24 believe.  You may believe everything a witness says, or part of
25 it, or none of it.

Jury Instructions

1          In considering the testimony of any witness, you may

2     take into account:

3          First, the witness's opportunity and ability to see,

4     or hear, or know the things testified to.

5          Second, the witness's memory.

6          Third, the witness's manner while testifying.

7          Fourth, the witness's interest in the outcome of the

8     case, if any.

9          Fifth, the witness's bias or prejudice, if any.

10         Sixth, whether other evidence contradicted the

11    witness's testimony.

12         Seventh, the reasonableness of the witness's

13    testimony in light of all the evidence.

14         And Eighth, any other factors that bear on

15    believability.

16         The weight of the evidence as to a fact does not

17    necessarily depend on the number of witnesses who testify.

18    What is important is how believable the witnesses were and how

19    much weight you think their testimony deserves.

20         You have heard two witnesses, Jonathan Dumke and

21    Scott Hellstrom, who stated their opinions and the reasons for

22    their opinions.  This opinion testimony is allowed because of

23    the education or experience of these two witnesses.

24         Such opinion testimony should be judged just like any

25    other testimony.  You may accept it or reject it and give it as

1   much weight as you think it deserves considering the witness's

2   education and experience, the reasons given for the opinion,

3   and all the other evidence in the case.

4           You are here only to determine whether the defendant

5   is guilty or not guilty of the charges in the indictment.  Your

6   determination must be made only from the evidence in the case.

7   The defendant is not on trial for any conduct or offense not

8   charged in the indictment.

9           You have heard testimony that the defendant made

10  certain statements.  It is for you to decide:

11          First, whether the defendant made any statement; and

12          Second, if so, how much weight to give to it.

13          In making those decisions, you should consider all

14  the evidence about a statement including the circumstances

15  under which the defendant may have made it.

16          You have heard evidence that the defendant committed

17  other acts not charged here.  You may consider this evidence

18  only for its bearing, if any, on the defendant's knowledge,

19  intent, or absence of mistake and for no other purpose.

20          The parties have agreed to certain facts that were

21  stated to you.  You should therefore treat those facts as

22  having been proved.

23          The defendant is charged in Count 1 of the indictment

24  with conspiracy to import a control substance.  You are

25  instructed that anabolic steroids are a controlled substance.

Jury Instructions

1  In order for the defendant to be found guilty of that charge,

2  the government must prove each of the following elements beyond

3  a reasonable doubt:

4          First, beginning in or about March 2017 and through

5  in or about October 2017, there was an agreement between two or

6  more persons to bring or introduce anabolic steroids into the

7  United States from a place outside the United States; and

8          Second, Mr. Newbold joined in the agreement knowing

9  of its purpose and intending to help accomplish that purpose.

10          A conspiracy is a kind of criminal partnership, an

11  agreement of two or more persons to commit one or more crimes.

12  The crime of conspiracy is the agreement to do something

13  unlawful.  It does not matter whether the crime agreed upon was

14  committed.  For a conspiracy to have existed, it is not

15  necessary that the conspirators made a formal agreement or that

16  they agreed on every detail of the conspiracy.  It is not

17  enough, however, that they simply met, discussed matters of

18  common interest, acted in similar ways, or perhaps helped one

19  another.  You must find that there was a plan to import a

20  controlled substance as an object or purpose of the conspiracy.

21          One becomes a member of a conspiracy by willfully

22  participating in the unlawful plan with the intent to advance

23  or further some object or purpose of the conspiracy even though

24  the person does not have full knowledge of all the details of

25  the conspiracy.  Furthermore, one who willfully joins an

Jury Instructions

1  existing conspiracy is as responsible for it as the

2  originators.

3          On the other hand, one who has no knowledge of a

4  conspiracy but happens to act in a way which furthers some

5  object or purpose of the conspiracy does not thereby become a

6  conspirator.  Similarly, a person does not become a conspirator

7  merely by associating with one or more persons who are

8  conspirators nor merely by knowing that a conspiracy exists.

9          The defendant is charged in Count 2 of the indictment

10  with importation of a controlled substance.  Once again, you

11  are instructed that anabolic steroids are a controlled

12  substance.  In order for the defendant to be found guilty of

13  that charge, the government must prove each of the following

14  elements beyond a reasonable doubt:

15          First, the defendant knowingly brought or introduced

16  anabolic steroids into the United States from a place outside

17  the United States; and

18          Second, the defendant knew the substance he was

19  bringing into the United States was anabolic steroids or some

20  other prohibited drug.

21          The government is not required to prove the amount or

22  quantity of anabolic steroids.  It need only prove beyond a

23  reasonable doubt that there was a measurable or detectable

24  amount of anabolic steroids.

25          It does not matter whether the defendant knew that

1    the substance was anabolic steroids.  It is sufficient that the

2    defendant knew that it was some kind of a prohibited drug.

3         A defendant may be found guilty of importation of a

4    controlled substance even if the defendant personally did not

5    commit the act or acts constituting the crime but aided and

6    abetted in its commission.

7         To aid and abet means intentionally to help someone

8    else commit a crime.  To prove a defendant guilty of

9    importation of a controlled substance by aiding and abetting,

10   the government must prove each of the following beyond a

11   reasonable doubt:

12        First, someone else committed importation of a

13   controlled substance;

14        Second, the defendant aided, counseled, commanded,

15   induced, or procured that person with respect to at least one

16   element of importation of a controlled substance;

17        Third, the defendant acted with the intent to

18   facilitate importation of a controlled substance; and

19        Fourth, the defendant acted before the crime was

20   completed.

21        It is not enough that the defendant merely associated

22   with the person committing the crime or unknowingly or

23   unintentionally did things that were helpful to that person or

24   was present at the scene of the crime.  The evidence must show

25   beyond a reasonable doubt that the defendant acted with the

1　knowledge and intention of helping that person commit

2　importation of a controlled substance.

3　　　　　A defendant acts with the intent to facilitate the

4　crime when the defendant actively participates in a criminal

5　venture with advanced knowledge of the crime and having

6　acquired that knowledge when the defendant still had a

7　realistic opportunity to withdraw from the crime.

8　　　　　The government is not required to prove precisely

9　which defendant actually committed the crime and which

10　defendant aided and abetted.

11　　　　　The defendant is charged in Count 3 of the indictment

12　with possession with intent to distribute a controlled

13　substance.  Once again, you are instructed that anabolic

14　steroids are a controlled substance.  In order for the

15　defendant to be found guilty of that charge, the government

16　must prove each of the following elements beyond a reasonable

17　doubt:

18　　　　　First, the defendant knowingly possessed anabolic

19　steroids; and

20　　　　　Second, the defendant possessed them with the intent

21　to distribute them to another person.

22　　　　　The government is not required to prove the amount or

23　quantity of anabolic steroids.  It need only prove beyond a

24　reasonable doubt that there was a measurable or detectable

25　amount of anabolic steroids.

1       It does not matter whether the defendant knew that

2  the substance was anabolic steroids.  It is sufficient that the

3  defendant knew that it was some kind of a federally controlled

4  substance.

5       An act is done knowingly if the defendant is aware of

6  the act and does not act through ignorance, mistake, or

7  accident.  The government is not required to prove that the

8  defendant knew that his acts or omissions were unlawful.  You

9  may consider evidence of the defendant's words, acts, or

10  omissions, along with all the other evidence, in deciding

11  whether the defendant acted knowingly.

12       You may find that the defendant acted knowingly if

13  you find beyond a reasonable doubt that the defendant:

14       First, was aware of a high probability that the

15  package referred to in this case contained a controlled

16  substance; and

17       Second, deliberately avoided learning the truth.

18       You may not find such knowledge, however, if you find

19  that the defendant actually believed that there were no drugs

20  in the package, or if you find that the defendant was simply

21  negligent, careless, or foolish.

22       A person has possession of something if the person

23  knows of its presence and has physical control of it or knows

24  of its presence and has the power and intention to control it.

25       The indictment charges that the offense alleged in

1  Count 1 -- the conspiracy offense -- was committed "from in or

2  about March 2017 or through in or about October 2017."

3         Although it is necessary for the government to prove

4  beyond a reasonable doubt that the offense was committed on a

5  date reasonably near the dates alleged in Count 1 -- I think

6  that should be Count 1 of the indictment -- it is not necessary

7  for the government to prove that the offense was committed

8  precisely on the dates charged.

9         A separate crime is charged against the defendant in

10  each count.  You must decide each count separately.  Your

11  verdict on one count should not control your verdict on any

12  other count.

13         A Verdict Form has been prepared for your

14  convenience.  It says the bailiff will hand it out to you so we

15  can review it.

16         All right.  The verdict form reads as follows:

17         "United States District Court for the District of

18  Idaho.  United States of America Plaintiff versus Travis M.

19  Newbold defendant.  Special Verdict Form.

20         "We the jury find unanimously as follows:

21         "Question 1:  As to Count 1 of the Second Superseding

22  Indictment, charging the defendant Travis M. Newbold, with

23  conspiracy to import into the United States from China a

24  mixture and substance containing a detectable amount of

25  anabolic steroids, a Schedule III controlled substance, in

1 | violation of Title 21, United States Code, Sections 952, 960,

2 | and 846, the defendant is:

3 | "Not guilty; or guilty.

4 | "Question 2:  As to Count 2 of the Second Superseding

5 | Indictment, charging the defendant Travis M. Newbold, with

6 | importing into the United States from China a mixture and

7 | substance containing a detectable amount of anabolic steroids,

8 | a Schedule III controlled substance, in violation of Title 21,

9 | United States Code, Sections 952, 960, and Title 18, United

10 | States Code, Section 2, the defendant is:"

11 | Again, the jury's options are "not guilty or guilty."

12 | Question 3 reads:  "As to Count 3 of the Second

13 | Superseding Indictment, charging the defendant Travis M.

14 | Newbold, with possession with intent to distribute a mixture

15 | and substance containing a detectable amount of anabolic

16 | steroids, a Schedule III controlled substance, in violation of

17 | Title 21, United States Code, Sections 841(a)(1), (b)(1)(C),

18 | and Title 18, United States Code, Section 2, the defendant is:"

19 | And your choices again are:  "Not guilty or guilty."

20 | There then is a date line and a signature line for the jury's

21 | foreperson.

22 | Returning to my instructions, you will take this

23 | verdict form with you to the jury room.  And when you have

24 | reached unanimous agreement as to your verdict, you will have

25 | your foreperson fill in, date, and sign the verdict form, which

1   sets forth the verdict upon which you agree.  You will then

2   return with your verdict to the courtroom.

3            We will, it says, now hear the closing arguments of

4   counsel, after which I will give you a few brief closing

5   instructions.  But as I alerted you yesterday, we will need to

6   take a recess now until 11:00 o'clock unfortunately.

7            And I do apologize.  I wish I could have arranged it

8   otherwise.  But we will take that recess at this point, start

9   at 11:00, and go directly into the closing arguments of

10  counsel.

11           Juror Number 6 has a scheduling conflict, and we

12  indicated that if all of the jurors were able to proceed to

13  deliberation, we would go ahead and treat him as the alternate

14  and excuse him at this time.

15           But I need to first inquire.  Is there any of the

16  other jurors who feel unwell or feel that you may not be able

17  to proceed with deliberations for any reason?  Anyone?

18        (No response.)

19           THE COURT:  Okay.  With that then, Juror 6, you will

20  be excused.  And we appreciate your service on the jury and

21  hope it's not been too much of an inconvenience.

22           I will indicate, just to be clear, that the original

23  alternate juror would have been Juror Number 31.  That was

24  based on how you were seated the first day.  Juror 31, you

25  would have been excused, but now you are going to step into the

Government's Closing Argument

1  seat of Juror 6 and continue and deliberate with the jury.  All

2  right?

3          Anything else at this time, counsel?

4          MR. WHEAT:  No, Your Honor.  Thank you.

5          MR. RICHERT:  No, thank you.

6          THE COURT:  All right.  If there's nothing else, we

7  will be in recess.

8          I do need to admonish the jury to continue following

9  my directions and order concerning juror conduct.  Don't

10 discuss the case among yourselves or with anyone else.  Do not

11 form or express any opinions about the case until it is fully

12 submitted to you, which won't occur until after the closing

13 arguments of counsel.

14         All right.  We will be in recess then until 11:00.

15     (Recess 9:28 a.m.  Resumed 11:05 a.m.  Jury in.)

16         THE COURT:  Thank you.  Please be seated.

17         For the record, I will note that the jury is present.

18         We are ready to begin the closing arguments of

19 counsel.

20         Mr. Wheat.  Mr. Wheat, would you make sure the

21 microphone -- if you need to turn to the jury or have it

22 positioned so the --

23              GOVERNMENT'S CLOSING ARGUMENT

24         MR. WHEAT:  Thank you.  Ladies and gentlemen, this is

25 a case of confirmation, and it's a case where the facts work

1   together to show that we have proven to you beyond a reasonable

2   doubt that Mr. Newbold is guilty of all three counts.

3           These three counts support each other.  And you now

4   know the rest of the story that Mr. Newbold's behavior of

5   importing anabolic steroids, of agreeing and conspiring to

6   import anabolic steroids, and actually possessing anabolic

7   steroids and intending to distribute anabolic steroids, and, in

8   fact, his own acknowledgment that he was distributing steroids

9   show that he's guilty of these three counts.

10          Mr. Newbold, on October 25th, 2017, went to the post

11  office and picked up that package that contained over 3 pounds

12  of anabolic steroids.  He did it at a time when he was involved

13  in a conspiracy to import anabolic steroids.  Investigators

14  looked further, after they did the controlled deliver, and they

15  confirmed more.  That he had more anabolic steroids at his

16  house, in powdered form, a little over three pounds there as

17  well including powders that were the same identity as the

18  powders found in that package, oxymetholone and methandienone.

19          And in total, there were about 13 kinds -- and you

20  can see the lab report from our chemists -- of anabolic

21  steroids in that house.  There were around 99 vials of liquid

22  anabolic steroids in that house with rubber stoppers, the kind

23  made for injectables.  The investigators looked further and

24  they found even more.

25          When they searched Mr. Newbold's phone, they found

Government's Closing Argument

1    that he was in a criminal partnership with someone who was

2    importing anabolic steroids, importing meaning to introduce or

3    to bring in anabolic steroids into the United States.  He was

4    advising that person.  He was ordering steroids from that

5    person.

6            You have heard Ms. Raquel Serna say that he had been

7    muling for that person.  And he'd informed that person that he

8    was selling steroids.  So, these three counts work together to

9    prove each other.

10           As you are well aware, you will be asked about three

11   counts.  Count 1, you will be asked whether you find beyond a

12   reasonable doubt whether Mr. Newbold conspired to import

13   anabolic steroids, and whether been March and 17 -- and

14   October, there was an agreement between two or more persons to

15   bring or introduce anabolic steroids into the United States.

16           You heard Special Agent Robertson tell you that

17   Mr. Newbold discussed orders from Amy, who informed them that

18   she was in China, as early as April.  That he advised her and

19   gave input on a name for a website as early as March.  That in

20   April, he even acknowledged prior orders of testosterone

21   enanthate, testosterone cypionate, and nandrolone decanoate,

22   which Special Agent Robertson explained to you what those are

23   and how they matched up with those texts.

24           You even heard that Mr. Newbold acknowledged that

25   Ms. -- Amy's business was illegal.  And then you heard from

Government's Closing Argument

1    Ms. Raquel Serna that at the time that she was living with

2    Mr. Newbold or when she was in a relationship with him in that

3    fall, that he enlisted her to help him with this.  That she

4    picked up a package for him once.  That that package went to

5    him, he weighed it and put stamps on it.  She signed for it.

6           That tracking number of that package, that you were

7    shown by Special Agent Korvela from US Postal Service,

8    confirmed Miss Serna's story.  You heard that she even dropped

9    off another package for him, and that he told her that he was

10   even muling and making money from it.

11          And you even saw two agreements in those text

12   messages, and you will have the opportunity to examine them

13   further.  And that Mr. Newbold agreed to forward a package to

14   New York and a package to Canada.  And that there was even a

15   package on his way to him at the time he picked up the package

16   during the controlled deliver.  Ladies and gentlemen, we have

17   proven to you that there was a conspiracy.

18          As for Count 2, ladies and gentlemen, we have proven

19   to you that Mr. Newbold imported that package from China.  You

20   heard Officer Wong talk to you about how that package came off

21   the airplane, across the tarmac, and to him.  That package had

22   a tracking number that was identifiable as coming from China.

23   It had a packing slip and an address showing that it was from

24   China.

25          Mr. Newbold picked up that, that box, that package of

1   anabolic steroids at the post offices on October 25th.  He had

2   been notified that it was from China.  He showed up.  Took

3   delivery of it.  And you've heard that that package contained

4   anabolic steroids, over 3 pounds of them.

5          And you've also heard -- and when I tell you that

6   these things work together, I want you to remember that at the

7   time he picked up that package, he was involved in a criminal

8   conspiracy.  And he had even more steroids at his house.

9          Now, there's a thought here about whether this was an

10  accident or a mistake.  About whether someone could get a

11  package and not know that it had anabolic steroids.  Well, what

12  you have also heard dispels that.  And to repeat again, that he

13  was in a conspiracy.  That he had more steroids at his home.

14  That he had a veritable, in my words, a dispensary of steroids

15  at his house.  That he had empty vials, filled vials, recipes

16  for vials.  That he had agreed to ship more packages.  That he

17  had agreed to receive and ship 50 grams of testosterone

18  enanthate.

19         Now, this coincidence could happen, but the facts

20  make that unreasonable to believe that this was an accident and

21  that Mr. Newbold just picked up a package.  He had ordered

22  anabolic steroids from China before.  He ordered them this

23  time.  He had others on the way.  This wasn't an accident.

24         Now, the judge has instructed you that when it comes

25  to knowing, that Mr. Newbold knowingly brought or introduced

Government's Closing Argument

1   anabolic steroids into the United States, or that he knew it

2   was anabolic steroids or some kind of prohibited drug, you can

3   find that if Mr. Newbold knew there was a high probability the

4   package contained a controlled substance and deliberately

5   avoided learning the truth.

6          He knew that a package that was showing up from China

7   at this time from Shenzhen was at least likely to contain

8   anabolic steroids.  We submit to you that based on his other

9   activities, he knew they were anabolic steroids, but he at

10  least knew that that package from China was likely to contained

11  anabolic steroids.  And if he didn't, then he deliberately

12  avoiding learning the truth.  He didn't open it up at the stand

13  or at the counter.  He took the package and left with it

14  knowing that that was from China, knowing that he had a

15  supplier, knowing that he had a dispensary at his house.

16         Mr. Newbold knowingly imported that package into the

17  United States.  It was not an accident.  It was not just

18  circumstance.  He imported it, and that supported his

19  conspiracy and that supported his intent to distribute

20  steroids.  These all work together.

21         So, and as for Count 3 -- and just another thought

22  for you, ladies and gentlemen.  I am showing you portions of

23  Exhibit 49 and 80.  The packaging -- Exhibit 49 being one of

24  the packages at his house and Exhibit 80 being packages found

25  in the package -- was similar.  And you can examine that

Government's Closing Argument

1    packaging.  It will actually be with you in the jury room.

2              Now, as for Count 3, possession with intent to

3    distribute a controlled substance, we have to prove two counts

4    to you.  And that is that Mr. Newbold knowingly possessed

5    anabolic steroids.  And we have proven that to you in multiple

6    ways.  Again, when he accepted a package of anabolic steroids,

7    it supports that the anabolic steroids at his house were his

8    and that he knew about it.

9              When he entered into a conspiracy, when he agreed

10   with someone to ship anabolic steroids for them, to receive

11   anabolic steroids, when he acknowledged other anabolic

12   steroids, it supports that he knew -- knowingly possessed those

13   anabolic steroids in his house, in his house, in his safe, in a

14   place where the other roommates, who have came to testify,

15   indicated they didn't have access to in that safe.  Either that

16   or they didn't even live there at the time these anabolic

17   steroids were found.

18             You heard Sergeant Harris testify to you that this

19   amount of steroids, the 99 vials and the powders, lots of

20   different kinds, about 13 different kinds, the empty vials

21   waiting to be filled, the recipes to help do that, the other

22   materials to help make those recipes, the empty capsules,

23   approximately a thousand, based on the two bags, one of which

24   says 500, they all support that this was a distribution setup

25   here.

1          And, in fact, you have Mr. Newbold's own words, in

2     his text messages, when Amy asks him -- to paraphrase -- "Do

3     you just sell to familiar guy?

4               "Yeah, definitely.

5               "Have you sold out of your last order?

6               "Almost."

7               Ladies and gentlemen, Mr. Newbold intended to

8     distribute those anabolic steroids.

9               And you also have Ms. Serna, who came in and talked

10    to you about mailing packages for Mr. Newbold, though she

11    didn't know what they were.  You also have her telling you

12    about how he talked about muling.

13              And in the context of possession with intent to

14    distribute, you also have her testimony that she saw

15    Mr. Newbold grab a vile out of fridge and help someone inject

16    themselves with that vile, in other words, to distribute that

17    substance.

18              That vile she described matched the description of

19    the other vials you have before you.  So, you have got

20    eyewitness evidence, you have got circumstantial evidence, and

21    you have even got the defendant's own words.  He knew he had

22    those steroids.  They were his steroids, and he possessed them

23    with the intent to distribute them to another person.

24              And so I submit to you that Mr. Newbold's acts here

25    support each other.  You know, the more these investigators

Defendant's Closing Argument

1  looked, they looked to see if he would pick up the package, and

2  he did.  They looked even further and found that he had a whole

3  bunch more anabolic steroids and equipment at his house.  And

4  they looked even further and found that he had all sorts of

5  conversations and a conspiracy going on support each other.

6          His importation of that controlled substance supports

7  his possession with the intent to distribute.  The fact that he

8  possessed with the intent to distribute supports that he

9  imported those steroids.  It supports the conspiracy that he

10  was involved with -- in.  That conspiracy supports that he

11  imported those anabolic steroids.  That conspiracy also

12  supports that those were his steroids, and he intended to

13  distribute them.

14          These facts all fit together.  We have proven to you,

15  beyond a reasonable doubt, that we have met these elements, and

16  we are going to ask you to find Mr. Newbold guilty on all three

17  counts.  Thank you.

18          THE COURT:  Mr. Richert.

19                   DEFENDANT'S CLOSING ARGUMENT

20          MR. RICHERT:  Thank you.  If I may, Judge, I will

21  probably get too loud if I stand next to that thing.

22          As the judge mentioned to you this morning, this is

23  closing arguments, and what I say is not evidence.  And if I

24  say something that you have a different memory of, use your

25  memory not -- not what I'm going to tell you.

Defendant's Closing Argument

1          But I do have to make some comments, because the

2    United States of America ultimately charged Travis here with

3    three separate crimes, not a triangle of crimes.

4          Instruction 20 will tell you that a separate crime is

5    charged against the defendant in each count, and you are to

6    consider them separately, not as a supportive triangle.

7          The case started and primarily is focused around a

8    package that customs people intercepted in San Francisco on

9    October 5 of last year, and then that package comes to Idaho

10   and is delivered to Mr. Newbold under the watchful eyes of the

11   government on October 25th.  That's really the focus of this

12   case.  Always has been.

13          In fact, I will try to focus on that package, but I

14   have to talk about each count.  Each count is related to that

15   package.  And, in fact, Instruction Number 17 -- excuse me --

16   will tell you that that package referred to in this case --

17   that's where the instruction is focusing you to that package.

18          Now, I will start with Count 1.  That's a charge of

19   conspiring with someone else to commit a crime.  Instruction

20   Number 13 tries to define what a conspiracy entails.  I have

21   highlighted --

22          THE COURT:  Mr. Richert, can you zoom in a little

23   bit?  The jury may not be able to see that.  There, that's much

24   better.  Thank you.

25          MR. RICHERT:  I have highlighted part of the

Defendant's Closing Argument

1   definition that a conspiracy is a kind of criminal partnership.

2   That two or more people join together to do a crime.  Agree to

3   do a crime.  So, what do we have here?  We have no evidence

4   that Mr. Newbold joined any type of partnership to conduct

5   criminal activity.  We do have evidence that Mr. Newbold was a

6   customer of one or more of these people in China, a client.

7           I will refer -- this is from who we understand to be

8   Amy.  This is from Exhibit 85, page 11 of Exhibit 85.  There is

9   some small talk.  "What about your work?" says Amy.  Travis

10  says, "It's okay so far."  Travis then says, "How is yours

11  doing?

12          "Very good.  More and more clients like my quality."

13          THE COURT:  Counsel, the yellow Post-it, the 85, that

14  reference, is that just your note?

15          MR. RICHERT:  That's my note.

16          THE COURT:  All right.  It would be better not to

17  present that to the jury.  Okay.  I know it was inadvertent.  I

18  just wanted to make sure that the jury is only looking at the

19  exhibit itself.

20          MR. RICHERT:  This is Belle, Exhibit 87.  Belle says,

21  "My business is not good.  Hope you have an order."  Criminal

22  conspiracy?  No.  This is Diana.  "Here I have got a good batch

23  of stuff.  Would you like to order some?"  This is Exhibit 88.

24  He says, "No."

25          Agent Robertson sort of conceded that maybe there's

Defendant's Closing Argument

 1  some solicitation going on by these people in China.  If that's

 2  semi true, that's not a criminal partnership.  That's a

 3  customer/client relationship.  There is no criminal partnership

 4  here.  There is no conspiracy here.

 5         Now, Travis has done some stuff he shouldn't have,

 6  but he didn't join into any conspiracy to commit a crime with

 7  these people.

 8         Count 2, the actual importation of steroids is the

 9  charge, and here's where I am going to focus on that package.

10  I think it's Exhibit -- well, it's the box.  In Exhibit 30 is

11  the mailing label.  The only connection Travis Newbold has to

12  that package is his address on it, not even his full name, just

13  his address.  And on October 25, the government had him come

14  down and get the package, which started this whole operation.

15         I suggest to you that the government has proven

16  nothing related to that package.  Absolutely nothing.  It's

17  shipped from somebody or a company named Idea Fortune Company

18  LTD.  Not this Amy's website or operation called Alliance Raws.

19  Apparently, Idea Fortune Company LTD also is located in

20  Shenzhen, China.  That doesn't prove that it came from Alliance

21  Raws.  It actually says from somewhere else.

22         I suggest to you that the emails, or WhatsApp chats,

23  or whatever they are called, prove to you that this package did

24  not come from Alliance Raws or this Amy.

25         You heard, as Mr. Wheat observed, that Ms. Serna

Defendant's Closing Argument

1   picked up a package.  I believe it was on the 12th.  You can

2   see where Amy says -- she says she's going to send two

3   packages.  This is Exhibit 85, page 17.  Right there in the

4   middle, "The first package will arrive at your place.  Here's

5   the tracking number."  In fact, we have evidence it did arrive,

6   and we have evidence that Ms. Serna picked it up.  That's on

7   the 12th.

8          Then on the 25th, the day that he's arrested, the day

9   this big box shows up -- because that's when the police brought

10  it.  That's when the police set him up -- this is another

11  Exhibit 85 conversation with whoever Amy is.  "You will receive

12  your package soon."  And this is on October 25 actually in the

13  morning.

14         Well, there's some discussion at the bottom.  Travis

15  says, "I have to go to the post office."  Amy says, "It does

16  not arrive at USA now."  Amy says, "I will tell you when it

17  arrives at your place."

18         Travis is responding to the government's notice to

19  come down to the post office on October 25.  Tells this Amy

20  person he has to go down to the post office to get her package.

21  She says, "It's not mine."  There is no evidence that this Amy

22  person or Alliance Raws has anything to do with that big

23  package he picked up on October 25.  Zero.  In fact, the

24  evidence is to the contrary.

25         Now, I want to talk a little bit about Count 3.  Oh,

Defendant's Closing Argument

1    before I do that, I asked the various law enforcement

2    agencies -- agents who testified, "Was there any evidence that

3    they found that suggested that Travis agreed to pay for this

4    package or that he actually paid for it?  Were there any

5    receipts in his house when they searched?"  None.  None of

6    that.  None of that.

7         Count 3, possession with intent to distribute a

8    controlled substance.  Here it's steroids.  And primarily, that

9    count is based upon what was found from the search warrant at

10   his house and, as Detective Harris indicated, primarily that's

11   because there was a bunch.  The weight of it suggests that

12   there was distribution.

13        You did not hear, however, that they found any

14   financial ledgers which typically are found when they search a

15   house.  You did not hear that there was any evidence of actual

16   delivery, unless we construe the shot in the stomach in the

17   kitchen as a delivery.  The law can probably get there, but I

18   suggest it doesn't.

19        There is no evidence or any postal records, other

20   than the one record or the evidence that Ms. Serna said that

21   Travis put stamps on a package.  There is no evidence, postal

22   records, showing that Travis mailed off illegal substances.

23        And what's interesting here is we had, I think,

24   Special Agent or Korvela from the post office actually, during

25   trial, runs down some records.  The government can get whatever

Defendant's Closing Argument

1  you mail if they look.  No evidence other than that.  No

2  substantial cash at his house.  700 bucks, maybe 750 I think is

3  what was found in a tin box.  No customer lists.  No evidence

4  of buys.

5          Oftentimes, as these narcotics officers indicate,

6  they will do buys, controlled buys so they can actually see and

7  record what's going on.  None of that.  There is no records,

8  none of that, because it didn't happen.

9          I have a little graphic that I pilfered from

10  somebody.  I can't remember who.  This is a graphic depicting

11  what's called levels of proof.  It's a bit of a staircase.

12          Scintilla would be little bit of proof but not

13  really.

14          Reasonable suspicion, well, it has to be based on

15  specific or particular facts, not based on hunches.

16          You get to probable cause.  Well, that's reasonable

17  and trustworthy information that a particular person has

18  committed a crime.  That's not reasonable doubt.

19          Preponderance of the evidence, that's the great --

20  greater weight or amount of the evidence.

21          Well, the government has to go beyond that.  Clear

22  and convincing evidence, a firm belief that the allegations are

23  true.  That's still not enough.  You have to have beyond that.

24  You have to be beyond a reasonable doubt.

25          THE COURT:  Counsel, I want to interject myself into

Government's Rebuttal Argument

1   this.  I defined reasonable doubt for the jury, and the jury is

2   to follow that definition.  And any discussion about gradations

3   of proof may be confusing to the jury.

4          So, I am going to caution the jury that although

5   there's been no objection from the government on this, I am not

6   sure that we should be injecting into this case any suggestion

7   or discussion of any standard of proof other than beyond a

8   reasonable doubt, which I have defined for you.

9          So, Mr. Richert, I don't think that really is an

10  appropriate argument, so I am going to ask you to rely upon the

11  Court's instructions as to what constitutes reasonable doubt,

12  which is the only burden of proof that the jury needs to use in

13  this case.  So --

14         MR. RICHERT:  I don't mean to mislead anybody,

15  particularly the Court, about what reasonable doubt is or

16  isn't.

17         But I suggest to you all that the government has not

18  walked up that staircase.  There's just too many holes in this

19  case, too circumstantial.  And, in fact, the evidence proves

20  Travis had no contact until the end of that package.  He should

21  be acquitted.

22         THE COURT:  Mr. Wheat, your rebuttal argument.

23                 GOVERNMENT'S REBUTTAL ARGUMENT

24         MR. WHEAT:  Well, ladies and gentlemen, as has been

25  indicated here, the judge hasn't told you anything about that

Government's Rebuttal Argument

1   staircase, and that staircase isn't the judge's words.  The

2   judge has asked you to follow the law, and I just want to

3   clarify what the law is that you are supposed to clari- -- to

4   follow today, and I am going to point you to Instruction Number

5   4.  And this can be a confusing concept, but this rule makes it

6   clear.

7            Proof beyond a reasonable doubt is proof that leaves

8   you firmly convinced the defendant is guilty.  It's not

9   required that the government prove guilt beyond all reasonable

10  doubt.

11           THE COURT:  Beyond all possible doubt.

12           MR. WHEAT:  Oh, gosh.  I'm sorry.  All possible

13  doubt.  Excuse me.  And a reasonable doubt is a doubt based

14  upon reason and common sense, not based purely on speculation.

15           Ladies and gentlemen of the jury, what Mr. Richert

16  has submitted to you is, much of it, speculation about what

17  might have been.

18           Just to respond to a few of the points.  Mr. Richert

19  indicated that there was no evidence of a conspiracy or a joint

20  venture.  You actually have evidence to the contrary.  The

21  government has accused importation or the introduction of

22  controlled substances into the United States.

23           A buyer and seller, really, what we're talking about

24  is bringing items into the United States.  That's the issue

25  here, and that's what you have been asked to decide, whether

Government's Rebuttal Argument

1   there was a partnership to bring items into the United States.

2          We've shown to you that there has been.  That he

3   agreed to, that he acknowledged past orders, current orders,

4   outstanding orders, and even agreed to help ship orders.  When

5   it said that Mr. Newbold didn't participate in that conspiracy,

6   you have over -- you have proof beyond a reasonable doubt to

7   the contrary.

8          Ms. Serna came in and told you that Mr. Newbold asked

9   her to help him in that.  Mr. Newbold involved her in that.

10  That she picked up a package that had Asian lettering on it.

11  That she watched Mr. Newbold weigh it in his kitchen, put

12  stamps on it and -- which is consistent with -- with what Amy

13  asked him to do -- asked him and agreed to pay him to do, and

14  what Mr. Newbold in that exchange agreed to do.

15         Furthermore, Mr. Newbold even told Ms. Serna that he

16  was getting 25 to $50 to do this, to -- for muling.

17  Mr. Newbold was helping to facilitate the flow of anabolic

18  steroids into the United States.  He agreed twice to send

19  packages.  And it was an ongoing thing.  He advised this person

20  on their business.  He talked about past orders.  He even told

21  that person he was selling.

22         So, there was -- so, Mr. Richert's indication that

23  there was no participation by Mr. Newbold in this conspiracy

24  is -- is just false and certainly not reasonable.

25         The package, that contained only the name Travis.

Government's Rebuttal Argument

1    Well, it certainly makes sense that people who are shipping

2    illegal items would disguise their names, either their seller's

3    names and not want to put their name on it or only put part of

4    their recipient's name to help disguise that.  That's

5    reasonable.

6              You know, as far as -- you know, as far as not

7    knowing about that package until at the end, ladies and

8    gentlemen, getting a package and finding out that it's -- it's

9    controlled substances is one thing.  I suppose that's possible.

10             But getting that package, when you have a whole bunch

11   more anabolic steroids at your house, and a whole bunch of

12   packaging materials, and also you are agreeing to ship anabolic

13   steroids for someone, and have ordered from this person in the

14   past, and admit, in these text messages, that you are selling

15   anabolic steroids, that -- that's another thing.  So, you can

16   consider that.

17             This was no coincidence.  This was not someone, "Oh,

18   my goodness.  This is anabolic steroids."  This is someone who

19   knew that that package was anabolic steroids.  He was working

20   with a supplier of anabolic steroids.

21             Okay.  And as far as the controlled buys, Mr. Richert

22   has indicated there weren't any ledgers or anything like that.

23   Well, we know that these two primarily dealt in digital

24   evidence.  This is the type of thing you wouldn't want to leave

25   too much of a paper trail for.

Government's Rebuttal Argument

1          And I have submitted to you that the more this

2   investigation progressed, the more stones they turned over, the

3   more they found.  So, when we had Mr. Newbold picking up a

4   package of 3 pounds of anabolic steroids, they looked further.

5   They found even more anabolic steroids at his house.  No

6   coincidence, when they found even more anabolic steroids at his

7   house, they found hundreds of vials.  They found around 13

8   kinds of anabolic steroids as reflected in the reports.  You

9   can rely on those.

10          They found pounds of anabolic steroids at the house.

11   And then they looked even further into his phone and even found

12   agreements and admissions that he was selling anabolic

13   steroids.  So, on all three of these counts, ladies and

14   gentlemen, I'm going to ask you to find common sense, to

15   utilize your common sense, and indicate that you -- to you that

16   just speculation doesn't create reasonable doubt.  Reasonable

17   doubt creates reasonable doubt.

18          And you haven't had evidence provided you that gives

19   you reasonable doubt.  In fact, what you've had is evidence

20   that gives you proof beyond a reasonable doubt and shows you

21   that Mr. Newbold committed this crime.

22          And my position is to firmly convince you of each of

23   these crimes, and the evidence is there, and we ask you to find

24   him guilty on all three counts.  Thank you.

25          THE COURT:  Thank you Mr. Wheat.

1    Ladies and gentlemen, I have got just a few closing

2    instructions for you and then you will be allowed to begin your

3    deliberations.

4    I will start by reminding you that the arguments and

5    states by the attorneys are not evidence.  They are not

6    witnesses.  What they have said in their opening statements,

7    closing arguments, and throughout the trial was intended to

8    help you interpret the evidence, but their statements are not

9    evidence.  If the facts, as you remember them, differ from the

10   way the lawyers have stated them, your memory of them must

11   control.

12   When you begin your deliberations, elect one member

13   of the jury as your foreperson.  He or she will preside over

14   the deliberations and speak for you here in court.  You will

15   then discuss the case with your fellow jurors to reach

16   agreement, if you can do so.

17   Your verdict, whether guilty or not guilty, must be

18   unanimous.  Each of you must decide the case for yourself but

19   you should do so only after you have considered all the

20   evidence, discussed it fully with the other jurors, and

21   listened to the views of your fellow jurors.  Do not be afraid

22   to change your opinion if the discussion persuades you that you

23   should, but do not come to a decision simply because other

24   jurors think it is right.

25   It is important that you attempt to reach a unanimous

 1    verdict; but, of course, only if each of you can do so after

 2    having made your own conscientious decision.  Do not change an

 3    honest belief about the weight and effect of the evidence

 4    simply to reach a verdict.

 5             Because you must base your evidence only on the --

 6    excuse me -- because you must base your verdict only on the

 7    evidence received in the case and on these instructions, I want

 8    to remind you that you must not be exposed to any information

 9    about the case or to the issues it involves during your

10    deliberations.

11             Except for discussing the case with your fellow

12    jurors during your deliberations, do not communicate with

13    anyone, in any way, and do not let anyone else communicate with

14    you in any way, about the merits of the case or anything to do

15    with it.  This includes discussing the case in person, in

16    writing, by phone or electronic means, by email, text messages,

17    or any other form of electronic communications.  This applies

18    to communicating with your fellow members of the jury, your

19    employer, the media or press and the people involved in the

20    trial.

21             If you are asked or approached in any way about your

22    jury service or anything about this case, you must respond that

23    you have been ordered not to discuss the matter and to report

24    that contact to the Court.

25             Do not read, watch, or listen to any news or media

1    accounts or commentary about the case or anything to do with

2    it.  Do not do any research, such as consulting dictionaries,

3    searching the Internet, or using any other reference materials,

4    and do not make any investigation or in any other way try to

5    learn about the case on your own.

6         Your verdict must be based solely upon the evidence

7    and on the law as I have given it to you in these instructions.

8    However, nothing that I have said or done was intended to

9    suggest what your verdict should be.  That is entirely for you

10   to decide.

11        Some of you may have taken notes during the trial.

12   Whether or not you took notes, you should rely on your own

13   memory of what was said.  Notes are only to assist your memory.

14   You should not be overly influenced by your notes or those of

15   your fellow jurors.

16        Ms. Bracke, we are not going to use electronic

17   presentation in the jury room.  Typically, we more commonly

18   have the evidence presented to you in the jury room like it was

19   in the courtroom, through an evidence presentation system.  But

20   I think in this case we are going to forego that.  And so I

21   think we will make sure that all hard copies are provide for

22   you during your deliberation.

23        The punishment provided by law for this crime is for

24   the Court to decide.  You may not consider punishment in

25   deciding whether the government has proved its case against the

1    defendant beyond a reasonable doubt.

2            After you have reached unanimous agreement on a

3    verdict, your foreperson will fill in the form that has been

4    given to you, sign and date it, and advise the bailiff that you

5    are ready to return to the courtroom.

6            If it becomes necessary, during your deliberations,

7    to communicate with me, you may send a note through the bailiff

8    signed by your foreperson.  No member of the jury should ever

9    attempt to communicate with me except by a signed writing, and

10   I will respond to the jury concerning the case only in writing

11   or here in open court.

12           If you send out a question, I will need to consult

13   with the lawyers before answering it, which may take some time.

14   You may continue your deliberations while waiting for the

15   answer to any question.  Remember that you are not to tell

16   anyone, including me, how the jury stands numerically or

17   otherwise on any question submitted to you, including the

18   question of the guilt of the defendant, until after you have

19   reached a unanimous verdict or have been discharged.

20           You will now retire to the jury room, and your first

21   duty will be to select your foreperson.  You may then start

22   your deliberations.  The bailiff will shortly bring in the

23   original exhibits which were admitted into evidence.

24           At this time, I will ask Ms. Bracke to swear

25   Mr. Metcalf to act as bailiff for the jury.

1          COURTROOM DEPUTY:  You do solemnly swear that you

2    will conduct this jury to the jury room for their deliberation,

3    that you will not permit them to be addressed upon any subject

4    connected with the trial in which they are sitting nor will you

5    do so yourself except to ask them if they have arrived at a

6    verdict, and when they have arrived at a verdict, that you will

7    return them to court, so help you God?

8          THE LAW CLERK:  I do.

9          THE COURT:  All right.  At this time, ladies and

10   gentlemen, you will be allowed to retire to the jury room and

11   begin your deliberations.

12         I think we've arranged to have a meal brought in

13   probably within the next half hour so you can just deliberate

14   through the lunch hour.

15         All right.  We'll be in recess at this time.

16     (Jury out 11:52 a.m.)

17         THE COURT:  Please be seated.

18         Counsel, just a couple of housekeeping matters.  If

19   you will review the trial exhibits to make sure they are in

20   proper form before they are sent back to the jury room.  If

21   there's any question about what was admitted or not admitted,

22   please let Ms. Bracke know, and then she'll notify me, and I

23   will come back in, and we will resolve any disagreement.

24         Also, in order to avoid delaying the jury, I will ask

25   that you stay within 15-minute driving distance of the

1    courthouse, so that if the jury reaches a verdict or has a

2    question, we can address that immediately.

3            Finally, if there is going to be any questions from

4    the jury, I will deal with it in writing.  We will take the

5    written question they submit.  I will prepare a written

6    response, circulate the question and my response to counsel,

7    hear your arguments and input.  And if you have some concern, I

8    will address that and then decide finally how to respond to the

9    question and submit a written response to the jury.

10           Any objection to that means of dealing with jury

11   questions?

12           MR. WHEAT:  No, Your Honor.

13           MR. RICHERT:  No.

14           THE COURT:  All right.  Is there anything else,

15   counsel?

16           MR. WHEAT:  There is just one issue.  I guess the

17   jury stepped out, so, Your Honor, admitted into evidence was a

18   certified conviction that -- that deals with Mr. Newbold's

19   prior conviction in 2015 in state court.

20           That certified conviction, I just wanted to indicate,

21   it does contain information about the sentence given in that

22   case as well.  The government's happy to redact it, if need be,

23   or according to defense's preferences.

24           THE COURT:  Mr. Richert, what's your preference?  The

25   fact of conviction is the only reason it was admitted.

1    Obviously, the sentence itself is not relevant.

2            MR. RICHERT:  It's a long document, so just the fact

3    of conviction, maybe just the first page would be fine.

4            MR. WHEAT:  And we are willing to do that, I think,

5    Your Honor.

6            THE COURT:  All right.  Work it out between

7    yourselves.  Make sure that it contains the fact of conviction

8    and nothing more.  However you can do that, by redaction or

9    just submitting the first page would be fine.

10           All right.  Anything else?

11           MR. WHEAT:  Nothing further from the government.

12   Thank you.

13           THE COURT:  If not, now we will be in recess.

14       (Recess 11:55 a.m.  Resumed 1:31 p.m.  Jury in.)

15           THE COURT:  Thank you.  Please be seated.

16           For the record, I will note that the jury has advised

17   the Court that they have reached a verdict.

18           Juror Number 11, I believe you are the foreperson; is

19   that correct?

20           JUROR NO. 11:  Yes, sir.

21           THE COURT:  Has the jury reach a unanimous verdict as

22   to all counts?

23           JUROR NO. 11:  We have, Your Honor.

24           THE COURT:  Would you hand that to Mr. Metcalf so

25   that I can inspect the verdict?

1          All right.  Ladies and gentlemen, I am going to have

2     the verdict published by having Ms. Bracke read it.  I will ask

3     you to listen carefully to make sure that it reflects your

4     individual verdict.  You may be polled individually or

5     collectively to determine whether this is your verdict.

6          If the defendant will please stand.

7          COURTROOM DEPUTY:  "United States District Court for

8     the District of Idaho, United States of America versus Travis

9     M. Newbold, Case 4:17-cr-328-BLW.

10         "We the jury find unanimously as follows:

11         "As to Count 1 of the Second Superseding Indictment,

12    charging the defendant, Travis M. Newbold, with conspiring to

13    import into the United States from China a mixture and

14    substance containing a detectable amount of anabolic steroids,

15    a Schedule III controlled substance, in violation of Title 21,

16    United States Code, Sections 952, 960 and 846, the defendant is

17    guilty.

18         "As to Count 2 of the Superseding Indictment,

19    charging the defendant, Travis M. Newbold, with importing into

20    the United States from China a mixture and substance contain a

21    detectable amount of anabolic steroids, a Schedule III

22    controlled substance, in violation of Title 21, United States

23    Code, Sections 952, 960, and Title 18, Section 2, the defendant

24    is guilty.

25         "As to Count 3 of the Superseding Indictment,

1    charging the defendant, Travis M. Newbold, with possession with

2    intent to distribute a mixture and substance containing a

3    detectable amount of anabolic steroids, a Schedule III

4    controlled substance, in violation of Title 81, United States

5    Code Sections 841(a)(1), (b)(1)(C), and Title 18, Section 2,

6    the defendant is guilty."

7           Dated October 19th, 2018.  Signed by the foreperson.

8           THE COURT:  Ladies and gentlemen of the jury, is this

9    your verdict?  So say you one, so say you all?

10          (Chorus of "Yes.")

11          THE COURT:  All right.  Mr. Newbold, you may be

12   seated.

13          Counsel, do you wish to have the jury polled

14   individually?

15          MR. RICHERT:  No.

16          THE COURT:  Mr. Wheat, I assume not?

17          MR. WHEAT:  No, Your Honor.  Thank you.

18          THE COURT:  Okay.  At this time, ladies and

19   gentlemen, I will direct the clerk to file the verdict for

20   record.

21          I'll note that we will schedule the sentencing in

22   this matter for January 10, 2019, at 1:30 p.m.  The presentence

23   report will be prepared and submitted to counsel by

24   November 29th, 2018.  Counsel will have two weeks or until

25   December 13th, 2018, to file objections to the presentence

1    report, and the final presentence report will be due to the

2    Court and counsel by December 27th, 2018.

3              And counsel, any written submissions you may have or

4    objections, final objections must be submitted at least a week

5    before sentencing.

6              Does the government seek to have the defendant

7    detained pending sentencing?

8              MR. WHEAT:  We do, Your Honor.

9              THE COURT:  All right.  Mr. Richert, I am going to go

10   ahead and order his continued detention, but I will, of course,

11   if you wish to take the matter up posttrial independently, as

12   far as his continued detention, we will take that up at that

13   time.  All right?

14             Ladies and gentlemen, I do want to discharge with you

15   the sincere thanks of the Court.  We appreciate your service in

16   this matter.  The question may now arise as to whether you may

17   discuss this case with the parties, with attorneys, or with

18   anyone for that matter.  And I would say now you are free to do

19   so, but you are also free to just simply choose not to discuss

20   it with anyone.

21             If anyone approaches you and wants to discuss your

22   jury service and you prefer not to, simply indicate that is

23   your preference.  And if anyone gives you any difficulty at all

24   in that regard, please contact the Court and we'll take

25   appropriate action.

1          You don't need to worry about that.  These are good

2     attorneys, and there is no reason to think that's an issue at

3     all.  I would almost encourage you, if any of the attorneys

4     reach out to ask you about, frankly, their performance or

5     things they might do to improve their skill as an attorney,

6     it's often helpful to them to have some feedback from the jury.

7     But again, you are under no obligation to respond at all.

8          I would indicate I take just a few minutes to visit

9     with the jury and thank you personally for your service.  Don't

10    feel any obligation to stay, but I will be with you in the jury

11    room just for a few minutes to at least have the chance to

12    shake your hand and thank you for your service.

13         Is there anything else, counsel, we need to take up

14    at this time?

15              MR. WHEAT:  None from the United States.  Thank you.

16              MR. RICHERT:  No.  Thank you.

17              THE COURT:  All right.  We will be adjourned.

18         (Adjourned 1:37 p.m.)

19

20

21

22

23

24

25

1                           GENERAL INDEX

2                                                              Page

3    Jury Instructions                                           4

4    Government's Closing Argument                              18

5    Defendant's Closing Argument                               26

6    Government's Rebuttal Argument                             33

7

8

9                              --oOo--

10                  COURT REPORTER'S CERTIFICATE

11

12        I, KATHERINE EISMANN, Official Court Reporter, certify

13   that the foregoing is a correct transcript from the record of

14   proceedings in the above-entitled matter.

15

16   Date:   February 18, 2019.

17                           /s/ *Katherine Eismann*

18                        Katherine Eismann, CRR, RDR

19

20

21

22

23

24

25